1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DOUGLAS HAUGABOOK,                          No. C 08-3860 SI (pr)

        Petitioner,                          **ORDER OF DISMISSAL**

    v.

ROBERT A. HOREL, warden,

        Respondent.
_____/

**INTRODUCTION**

    Douglas Haugabook, a <u>pro se</u> prisoner, has filed a petition for writ of habeas corpus challenging a 1998 robbery conviction. Now before the court for consideration is respondent's motion to dismiss the petition as untimely. For the reasons discussed below, the court finds the petition to be barred by the statute of limitations and dismisses it.

**BACKGROUND**

    Haugabook was convicted on a guilty plea in the San Francisco County Superior Court of robbery. He was sentenced on June 24, 1998 to 25 years to life in prison. He did not appeal.

    Haugabook filed several state habeas petitions. On December 31, 1998, he sent a letter to the San Francisco County Superior Court. The court treated the letter as a petition for writ of habeas corpus and denied it on January 20, 1999. Haugabook next filed a petition for writ of habeas corpus in the San Francisco County Superior Court on April 7, 1999, that was denied on May 11, 1999. Haugabook then filed a petition for writ of habeas corpus in the California Court

of Appeal on May 20, 1999, that was denied on June 2, 1999.  Lastly, he filed a petition for writ of habeas corpus in the California Supreme Court on June 17, 1999, that was denied on September 20, 1999.

Haugabook filed this action nine years later.  His federal petition has a proof of service showing it was mailed on July 30, 2008.  The petition apparently first went to the U.S. Court of Appeals for the Ninth Circuit, where it was stamped "received" on August 5, 1998.  That court forwarded the petition to this court, where the petition was stamped "filed" on August 12, 2008.  Because Haugabook is a prisoner proceeding pro se, he receives the benefit of the prisoner mailbox rule, which deems most documents filed when they are given to prison officials to mail to the court.  See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).  His federal habeas petition is deemed filed as of July 30, 2008, the date he put it in the mail to be sent to the court.

**DISCUSSION**

Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which:  (1) the judgment became final after the conclusion of direct review or the time has passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1).

Here, the limitations period started upon "the expiration of the time for seeking [direct] review."  28 U.S.C. § 2244(d)(1)(A).  If a petitioner could have sought review by the state court of appeals or the state supreme court, but did not, the limitation period will begin running against him the day after the date on which the time to seek such review expired.  See Smith v. Duncan,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

297 F.3d 809, 812-13 (9th Cir. 2002).  The time for Haugabook to seek direct review concluded on August 23, 1998, when the time to file a notice of appeal expired.  See Cal. Rule of Court 8.308(a) (providing that appeal from criminal judgment must be filed within sixty days after rendition of judgment or making of order being appealed) (formerly Cal. Rule of Court 31).  The presumptive deadline for Haugabook to file his federal petition therefore was August 23, 1999. He missed that by several years, so unless he is entitled to some tolling, his petition is very untimely.

The one-year limitations period will be tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).  Haugabook receives tolling for the 20 days during which his first habeas action (i.e., the letter he sent that was treated as a habeas petition) was pending in the San Francisco County Superior Court.  He does not receive the tolling between the denial of his first petition/letter on January 20, 1999 and the filing of the next round of habeas petitions in state court because he started the next round in the same level court. See Evans v. Chavis, 546 U.S. 189, 197 (2006); Carey v. Saffold, 536 U.S. 214, 223 (2002). He receives tolling for the entire time during which his next round of habeas petitions was pending in the California courts, i.e., from the filing of the petition in the San Francisco County Superior Court on April 7, 1999, through the denial of his petition by the California Supreme Court on September 20, 1999.   With this statutory tolling, Haugabook's deadline to file his federal petition was extended to March 4, 2000.  He missed that deadline by more than eight years, so his petition is timely only if there is a reason to equitably toll the limitations period for a sufficient amount of time to push back the deadline eight years.

The one-year limitation period can be equitably tolled because § 2244(d) is a statute of limitations and not a jurisdictional bar.  Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc).  Two standards have been

3

United States District Court
For the Northern District of California

1  articulated for determining whether equitable tolling is appropriate.  The standard that has long

2  used in the Ninth Circuit is that equitable tolling will not be available in most cases because

3  extensions of time should be granted only if "extraordinary circumstances beyond a prisoner's

4  control make it impossible to file a petition on time."  Beeler, 128 F.3d at 1288 (citation and

5  internal quotation marks omitted).  The Supreme Court articulated the standard differently, and

6  stated that "a litigant seeking equitable tolling bears the burden of establishing two elements:

7  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

8  stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (petitioner's lack of diligence

9  in filing timely state and federal petitions precluded equitable tolling); Raspberry v. Garcia, 448

10 F.3d 1150, 1153 (9th Cir. 2006) (quoting Pace); see also Miles v. Prunty, 187 F.3d 1104, 1107

11 (9th Cir. 1999) ("When external forces, rather than a petitioner's lack of diligence, account for

12 the failure to file a timely claim, equitable tolling of the statute of limitations may be

13 appropriate.").  The Ninth Circuit has not settled on a single consistent standard.  See Harris v.

14 Carter, 515 F.3d 1051, 1055 (9th Cir.), cert. denied, 129 S. Ct. 397 (2008) (declining to decide

15 whether Pace standard differs from Beeler standard).

16      Under either articulation of the test, the petitioner bears the burden of showing that

17 equitable tolling is warranted in his case.  See Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir.

18 2002); Pace, 544 U.S. at 418.   The petitioner also must show that the extraordinary

19 circumstances "were the cause of his untimeliness."  Spitsyn v. Moore, 345 F.3d 796, 799 (9th

20 Cir. 2003).  Spitsyn's mention of causation is important because it shows that equitable tolling

21 often is not susceptible to a simple yes/no kind of inquiry, but instead requires the court to

22 determine whether equitable tolling is allowed for the circumstance and, if so, how much time

23 should be tolled for the circumstance.  An acceptable reason for some delay doesn't necessarily

24 mean that all delay is excused under the equitable tolling doctrine.

25      Haugabook urges that he should receive equitable tolling because he is mentally ill.

26 Whether mental illness warrants tolling depends on whether the petitioner's mental illness during

27

28

4

the relevant time "constituted the kind of extraordinary circumstances beyond his control, making filing impossible, for which equitable tolling is available." <u>Laws v. Lamarque</u>, 351 F.3d 919, 922-23 (9th Cir. 2003).  "Where a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled." <u>Id.</u> at 923; <u>see</u> <u>Kelly</u>, 163 F.3d at 541.  While <u>Laws</u> and <u>Kelly</u> permit equitable tolling for mental incompetence, they do not stand for the proposition that every mental illness automatically tolls the limitation period.  Most mental illnesses are treatable, and with proper treatment many, if not most, sufferers are capable of managing their own affairs. <u>See</u> <u>Miller v. Runyon</u>, 77 F.3d 189, 192 (7th Cir. 1996).  The court must be sensitive to the problems the mentally ill face but also must be careful not to stereotype all mentally ill -- especially those who take medication to treat their illness -- as inherently and endlessly incompetent.

It is not disputed that Haugabook has a serious mental illness.  He has schizophrenia, and takes psychotropic medications for that illness.   However, the record now before the court shows that he is not incompetent and instead functions adequately with the help of the medications.

First, Haugabook has been urging his mental impairment as a reason to set aside his conviction since 1998.  For example, his letter to the San Francisco County Superior Court in 1998 (in the same handwriting used on his federal petition in 2008) explained that he was "mentally impaired and [has] a history of taking psychotropic medication," and therefore wanted a transcript of the plea and sentence and to have his sentence recalled.  Resp. Exh. 1.  He argued that the public defender had inadequately represented him by not providing "the courts with the appropriate information and mitigating circumstances."  <u>Id.</u> In his state petition in 1999, he mentioned his schizophrenia and medications as reasons to excuse his criminal conduct and to set aside his conviction.  <u>See</u> Resp. Exh. 2, p. 3-4.  Counsel may not have presented an insanity defense at a trial, but the issue was not left unexplored.  Haugabook had entered a not guilty by

5

1   reason of insanity plea eight months before he entered his guilty plea, see Resp. Exh. 3, and he

2   had been evaluated by a psychologist. See Resp. Supplemental Exh. 7 at 11/23/97 confidential

3   psychological evaluation by Dr. French (expressing opinion that Haugabook does not meet NGI

4   criteria of California Penal Code § 1026).  By entering the plea, he received a lengthy 25-years-

5   to-life sentence, but avoided an even lengthier possible sentence of 85-years-to-life.  See Resp.

6   Exh. 3 at Exh. A at 6/24/98 RT 11.  Haugabook's awareness of the value of the mental illness

7   to excuse some conduct, and his use of the mental illness in his arguments a decade ago weigh

8   against finding that same mental illness precluded him from understanding his legal situation or

9   from filing his federal petition until last year.  Since 1998, he has shown an awareness and

10  ability to argue the importance of his mental illness in his case.

11       Second, Haugabook's mental illness appears to be controlled, as evidenced by the fact that

12  he generally has been receiving the lowest level of care in the mental health care program in the

13  California Department of Corrections.  After a mental health evaluation, a clinician determines

14  whether the inmate meets the criteria for inclusion in the mental health treatment population, and

15  if so, which level of care he should receive.  See Resp. Supplemental Exh. 7 (ninth page from

16  end), Mental Health Placement form dated August 5, 1998.  The form shows four levels of care

17  – ranging from most serious to least serious -- available for prisoners in the mental health

18  treatment population: inpatient at the Department of Mental Health, mental health crisis beds,

19  enhanced outpatient program ("EOP"), and clinical case management ("CCCMS").  Id.

20  Haugabook has been at the CCCMS or EOP level of care for almost the entirety of his stay in

21  the California Department of Corrections since 1998.   There are repeated references to him

22  being in EOP or CCCMS on many different kinds of forms – from medical care forms, to

23  disciplinary report forms, to housing forms – and only one departure from these low level

24  categorizations (i.e., when he was put in a crisis bed on or about February 15, 2005).  See Resp.

25  Supplemental Exh. 7, CDC-128 dated Feb. 15, 2005.

26       Third, Haugabook was functioning at a sufficient level to hold a job.  He worked as a

27

28                                                   6

United States District Court
For the Northern District of California

utility worker from January 2002 through mid-April 2002.  <u>See</u> Resp. Supplemental Exh. 7, at Inmate Work Supervisor's Time Logs for January, February, March and April 2002.  He also had a job as a porter in July 2000.  <u>See</u> Resp. Supplemental Exh. 7 at Work Supervisor's Report dated August 2, 2000.

Fourth, prison officials considered him capable of pursuing an education.  He was removed from a general education program in 2000 because, "[a]fter assessing inmate Haughabook, it was found that the HS/GED academic level was too high." Resp. Supplemental Exh. 7, at 4/19/00 CDC-128.  In 1999, an evaluator noted that he refused to attend a particular course to be tested.

Fifth, Haugabook received numerous disciplinary and administrative write-ups – almost all of which show that prison officials considered whether the behavior was the product of mental illness or whether special accommodations were required because of any mental illness and decided that they were not. This would suggest that prison officials did not view Haugabook as incompetent or incapable of understanding his situation.

Finally, the court notes that Haugabook's legal claim is based on his very specific recollection of a perceived deficiency at the plea entry in 1998.  He argues that his plea is invalid because he never signed his name on any document memorializing his plea. Petition, p. 6.  He also argues that he tried to withdraw his plea but the district attorney and judge would not allow him to do so.  <u>Id.</u>  At this point it is not necessary to consider the legal merit of Haugabook's claim – what matters for present purposes is that the arguments show that the factual basis for the claim was known to Haugabook since 1998.

On the record, the court concludes that Haugabook's mental illness and medications therefor do not warrant equitable tolling of the limitations period such that his eight year delay in filing his federal petition can be excused.  Perhaps if he had missed the deadline by just a matter of months or even just a year, his mental illness could excuse the missed deadline, but the records clearly indicate that there is not enough there to excuse an eight year delay. Haugabook's

United States District Court
For the Northern District of California

7

1  petition was untimely filed and is barred by the habeas statute of limitations.

2

3                                    **CONCLUSION**

4          Respondent's motion to dismiss is GRANTED.  (Docket # 9.)  The petition for writ of

5  habeas corpus is dismissed because it was not filed before the expiration of the limitations period

6  in 28 U.S.C. § 2244(d)(1).  The clerk will close the file.

7          IT IS SO ORDERED.

8  DATED: September 5, 2009

9                                              _____
                                              SUSAN ILLSTON
                                              United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California